PORTER AND RIPA ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. 200 MADISON AVENUE REAL ESTATE GROUP, A LIMITED PARTNERSHIP, LOUIS C. RIPA, GENERAL PARTNER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 6, 1979—Decided March 23, 1979.

Before Judges LYNCH, CRANE and HORN.

*Mr. Edwin C. Landis, Jr.* argued the cause for appellant (*Messrs. Meyner* and *Landis,* attorneys; *Mr. Richard L. Schaplowsky* on the brief).

*Messrs. Robert J. Hantman* and *Peter R. Sarasohn* argued the cause for respondent (*Messrs. Ravin & Kesselhaut,* attorneys; *Messrs. David N. Ravin* and *Bernard Schenkler* on the brief).

PER CURIAM. This suit involves the validity of defendant landlord's repossession of premises leased to plaintiff, a commercial tenant, and distraint of the tenant's personal

property located on the premises following nonpayment of rent.

Plaintiff-tenant Porter and Ripa Associates, Inc. commenced the instant action by filing a complaint with supporting affidavit, charging that it had been wrongfully evicted by defendant-landlord 200 Madison Avenue Real Estate Group. On January 30, 1978 Superior Court Judge Bertram Polow signed an "order to Show Cause with Temporary Restraints" which permitted plaintiff to remove personal property, including business records and material pertaining to ongoing projects, and required plaintiff to post the rent due ($22,000) in an escrow account. Subsequent court orders more specifically delineated plaintiff's right of access to the repossessed premises and directed defendant's general partner, Louis C. Ripa, to comply fully with the court's orders.

On April 24, 1978 the trial judge entered an order which included a denial of defendant's motion for summary judgment and a grant of plaintiff's cross-motion for partial summary judgment — the judge having determined that "the eviction of the Plaintiff was wrongful and in breach of the lease." On May 1, 1978 the Appellate Division denied defendant's motion to stay judgment and for leave to appeal. The April 24 order was supplemented by an order entered on June 9, 1978, stating that the partial summary judgment embodied in the April 24 opinion of the trial judge was to be considered a final judgment on less than all the claims made by plaintiff and defendant under *R.* 4:42–2. Notice of appeal was filed with the Appellate Division by defendant on July 17, 1978.

Following the publication of *Delbridge v. Jann Holding Co.,* 164 *N. J. Super.* 506 (App. Div. 1979), which held that an order entered by a trial judge pursuant to *R.* 4:42–2, directing entry of final judgment upon less than all of the claims (as was done in the instant case) is not binding upon us, plaintiff moved to dismiss the appeal. The grounds were that the order appealed from was not a final judgment

and we had previously denied leave to appeal. We reserved decision of the motion until after argument of the appeal.

■ We have now considered plaintiff's argument in the light of the events which transpired since we initially denied leave to appeal. Plaintiff's motion to dismiss was made after the case had been fully processed for argument on appeal. It would serve no useful purpose to dismiss the appeal at such late date, when the parties assumed that the appeal was as of right. Additionally, we believe that the interests of justice arising from the circumstances which are now present warrant our hearing the appeal. Accordingly, we deny the motion to dismiss and grant leave to appeal *nunc pro tunc* from the order. *Delbridge v. Jann Holding Co., supra.*

Before proceeding, we also note that defendant does not argue that there are any factual issues which rendered the order under appeal invalid. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67 (1954) ; *R.* 4:46–2.

We need not recite the facts in full, since they are set forth in Judge Polow's reported opinion and neither party contends that his statement thereof is erroneous. The judge based his decision that defendant had wrongfully dispossessed and distrained upon plaintiff's property located within the demised premises, primarily upon the thesis that *N. J. S. A.* 2A:33–1 *et seq.,* covering the subject of distraints, is unconstitutional for the reasons expressed in *Van Ness Industries v. Claremont Painting,* 129 *N. J. Super.* 507 (Ch. Div. 1974)[1], and the plaintiff had not waived its constitutional right of due process. The judge also held that the terms of the lease between the parties required that defend-

---

[1] In *Van Ness* the judge "found the distraint procedure in New Jersey violative of the Due Process Clause of the 14th amendment of the United States Constitution because of its failure to require notice to the tenant prior to seizure of the leased premises and the tenant's property located therein." *Porter & Ripa v. 200 Madison Ave. Real Estate,* 159 *N. J. Super.* at 321.

ant give notice pursuant thereto before re-entering in the event of a default by the tenant, and that such notice had not been given. We affirm, solely on the ground that defendant breached the terms of its lease with plaintiff, as demonstrated hereinafter. We express no opinion as to the soundness of either *Van Ness Industries v. Claremont Painting, supra,* or Judge Polow's determination of the constitutionality of defendant's actions in re-entering the demised premises or distraining upon plaintiff's property by reason of plaintiff's default.

The lease between plaintiff and defendant has two provisions which are basic to this dispute. Those provisions as pertinent are reproduced as follows:

ARTICLE X

DEFAULT PROVISION

The Tenant, shall without any previous demand therefor, pay to the Landlord, or its agent, the said rent at the times and in the manner above provided. In the event of the non-payment of said rent, * * * the Landlord or its agents shall have the right to and may enter the Demised Premises * * * without being liable for any prosecution or damages therefor, * * * and all rights of the Tenant to repossess the Demised Premises under this lease shall be forfeited. Such re-entry by the Landlord shall not operate to release the Tenant from any rent to be paid or covenants to be performed hereunder during the full term of this lease. * * * In any such event the Landlord shall have the right, as agent of the Tenant, to take possession of any furniture, fixtures or other personal property of the Tenant found in or about the Demised Premises and sell the same at public or private sale and to apply the proceeds thereof to the payment of any monies becoming due under this lease * * *.

  *      *      *      *      *      *      *      *

ARTICLE XXII

DEFAULT OF PROVISIONS OF LEASE

In case of violation by the Tenant of any of the covenants, agreements, terms and conditions of this lease, and upon failure to discontinue such violation within ten (10) days after written notice thereof given to the Tenant, this lease shall thenceforth, at the option of the Landlord, become null and void, and the Landlord may re-enter without further notice or demand. The rent in such case shall become due, be apportioned and paid on and up to the day of such re-entry, and the Tenant shall be liable for all loss or

damage resulting from such violation as aforesaid. No waiver by the Landlord of any violation or breach of condition by the Tenant shall constitute or be construed as a waiver of any other violation or breach of condition, nor shall lapse of time after breach of condition by the Tenant before the Landlord shall exercise its option under this paragraph operate to defeat the right or [sic] the Landlord to declare this lease null and void and to re-enter upon the Demised Premises after the said breach or violation.

The parties and the court below have alluded to the difficulty of reconciling the language in Article X with the language in Article XXII in order to come out with a harmonious lease structure. Defendant says in its brief that "[t]hese two articles of the lease, while not mutually exclusive, are obviously at variance * * *," and plaintiff and the trial judge refer to the ambiguity implicit in the failure of Article X to state whether notice is required to trigger that default provisions (159 *N. J. Super.* at 328).

■ ■ It will be noted that, although Article X states that the tenant shall pay the rent when due without any previous demand, it does not specifically provide that the notice provision of Article XXII should be inapplicable. We agree with Judge Polow that under the circumstances prevailing in the instant case the ambiguity raised by reason of the language of the two articles must be resolved in favor of plaintiff. *Carteret Properties v. Variety Donuts, Inc.,* 49 *N. J.* 116 (1967), supports this view, as expressed in the following quotation therefrom:

In situations of this sort, it is only just that ambiguities in a lease which are reasonably susceptible of disparate interpretations should be resolved in favor of the tenant. Where doubt exists courts generally favor the tenant rather than the landlord. * * * The rule of construction favoring the tenant is particularly strong when resolution of ambiguous language against him will result in a forfeiture of his estate. [at 127]

■ *Carteret Properties* is particularly relevant to the case at bar because it, too, involved the interpretation of a commercial lease. It should be noted at this point that Article

X explicitly provides that when the landlord invokes that provision, "all rights of the Tenant to repossess the Demised Premises under this lease shall be forfeited." Thus, under Article X, upon the failure to pay rent the action of the landlord in repossessing is a finality, without any notice whatever. It has been stated that the law "abhors a forfeiture." *Oldfield v. Stoeco Homes, Inc.*, 26 *N. J.* 246, 257 (1958). "[W]hen a choice exists [language] is to be construed against rather than in favor of a forfeiture." *Lehigh Valley R. R. Co. v. Chapman*, 35 *N. J.* 177, 188 (1961), cited in *Carteret Properties, supra*, 49 *N. J.* at 127. See also, *Sparks v. Lorentowicz*, 105 *N. J. Eq.* 18 (Ch. 1929), aff'd as modified on an unrelated issue, 106 *N. J. Eq.* 178 (E. & A. 1930); 22 *N. J. Practice (Lewine, Landlord and Tenant Law)*, § 241 at 326 (1962).

Defendant further argues that if a ten-day notice were required before it could proceed under Article X, it had as a matter of fact met that notice requirement. It claims that it gave written notice to representatives of plaintiff on December 28, 1977 that plaintiff was in arrears in rent due and owing, 11 days before the re-entry and distraint.

The "written notice" defendant refers to consists of a "MEMO" which is dated "12/28/77" and states:

1. Please see that last month's rent is paid before Friday *30* Dec.
2. Also please see that my payment is ready then also.

The note is signed "Lou" (Louis C. Ripa). The second point of the memorandum refers to payment on a personal obligation owed to Louis C. Ripa. defendant's general partner.

The informal memorandum contrasts with the provisions of Article XIX of the lease, which states that when notice is to be given by the landlord it should be given "by registered or certified mail," or by "personal service * * * in the same manner that personal service of a summons or other legal process may be made." In addition, the memorandum in no way indicates that if the rent payment is not made

action under Article X would be undertaken. The notice did not satisfy the lease requirements.

Moreover, on January 3, 1978 defendant Louis C. Ripa sent a handwritten letter to plaintiff, demanding payment of installments of principal due on personal demand notes, in which it was stated: "You owe the 200 Madison Avenue Real Estate Group November and December payments totally [sic] $22,000.00." This letter was written six days before defendant entered the demised premises. Both the communication of December 28, 1977 and the letter of January 3, 1978 lack the attributes of the type of notice contemplated by Article XXII in order to lay the contractual foundation for the strong action taken by defendant.

We are also aware of the fact that plaintiff had failed to make timely payments of rent on prior occasions. In fact, plaintiff's respective rent payments had been delinquent each month for approximately five months preceding defendant's re-entry and distraint. In view of these delinquencies, defendant ridicules plaintiff's claim that if it had received the notice required under Article XXII, it would have cured its default. We do not agree. A formal notice pursuant to this latter article would probably have alerted plaintiff to the fact that defendant would no longer condone, as it had for the past few months, the failure to pay the rent on time, and would therefore take action under the terms of Article X of the lease. Following the re-entry and distraint defendant did post $22,000 as required by the court. Probably the same type of demand as that of December 28, 1977 was given on past occasions when plaintiff's rent payments were delinquent. To some degree it may even be said that defendant lulled plaintiff into a belief that something more than the usual demand would be made if a re-entry and distraint were contemplated. *Cf. Sparks v. Lorentowicz,* 106 *N. J. Eq.* 178 (E. & A. 1970).

We see the situation in the instant case as similar to that referred to in *Carteret Properties v. Variety Donuts, Inc., supra.* The required notice not having been given, the

re-entry and distraint were in violation of the terms of the lease.

For the foregoing reasons, the order under appeal is affirmed.